[No. 15049.    Department One.—October 25, 1893.]

## MICHAEL CARRAHER, RESPONDENT *v.* THE SAN FRANCISCO BRIDGE COMPANY, APPELLANT.

NEGLIGENCE—OPERATION OF PRIVATE RAILROAD—INJURY TO EMPLOYEE OF SUB-CONTRACTOR—INSTRUCTION.—In an action to recover damages for personal injuries, it appeared that the defendant had a contract to construct a section of seawall, and for that purpose operated a temporary railroad upon which it ran a train of sand cars about twenty times a day, and that the plaintiff hauled about twenty-five loads of rock per day over a road which crossed the railroad track, as a teamster for a sub-contractor who furnished the rock for the seawall, and while returning from the delivery of a load of rock and while near the crossing the sand train passed over the crossing and frightened his horse, causing the plaintiff to be precipitated into an excavation, whereby he sustained personal injuries. *Held*, that the refusal of the court to instruct the jury that the railroad crossing was not on a public street but was on a portion of the seawall under the control of the defendant, was not error, as the defendant was bound to exercise ordinary care for the safety of its employees and sub-contractors, regardless of the fact that the road had been constructed for its private use, and was not a public road.

ID.—CONTRIBUTORY NEGLIGENCE—CONFLICTING EVIDENCE—REVIEW UPON APPEAL.—Where the verdict in such action is in favor of the plaintiff, and the evidence is substantially conflicting both as to the negligence of the defendant, and as to whether the negligence of the plaintiff contributed to his injury, an order denying a new trial cannot be reversed on the ground that the verdict is not justified by the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

C. CAL.—12

*R. Percy Wright,* for Appellant.

*Cary & Sullivan,* for Respondent.

VANCLIEF, C.—Action to recover damages for a personal injury to plaintiff, alleged to have been caused by the negligence of defendant. The cause was tried by a jury, whose verdict was for the plaintiff, assessing the damages at one thousand dollars, and judgment accordingly.

The defendant has appealed from the judgment, and from an order denying a new trial.

The case was here on a former appeal from a similar judgment, and was reversed on the ground of error in an instruction to the jury. (*Carraher* v. *San Francisco Bridge Co.,* 81 Cal. 98.)

The defendant had a contract with the board of harbor commissioners to construct a section of the seawall on the water front of the city of San Francisco, which, among other things, required the defendant to fill with sand and rocks a strip between the wall and shore. The sand for this filling was obtained from Black Point, and thence transported by the defendant to the place to be filled (a distance of a mile and a half) on a temporary railroad, by means of a train of twelve to sixteeen cars propelled by a steam locomotive. The rock to be filled in was hauled by teams from Telegraph Hill. Cummings & Co. had a sub-contract with defendant to haul the rock, or a portion of it, and employed the plaintiff as one of the teamsters for that purpose. The road on which the rock was hauled crossed the railroad track at a point where the latter ran along the water front. While plaintiff was returning with the horse and cart he was driving, after having delivered a load of rock, and having approached very nearly to the crossing, the foremost car of the sand train passed over the crossing and frightened his horse. In attempting to back, or turn, the horse, cart, and plaintiff were precipitated into an open excavation, whereby the plaintiff's wrist was broken. The engine was not in front of the train, but

at the rear, pushing or backing it. Plaintiff testified
that when the foremost car came upon the crossing he
judged the horse's head was within two feet of the car.
A coal-house and tool-house stood only four to seven
feet from the crossing, which, according to plaintiff's
testimony, prevented him from seeing the approaching
train until it came within seven or eight feet of the
crossing, and from a diagram furnished by defendant
it appears that this may have been true, yet it was con-
tradicted by witnesses on the part of the defendant.
The evidence was also conflicting as to whether any
signal of the approach of the train was given by whistle
or bell. The defendant generally kept a flagman near
that point, and the engineer on the train testified that
on the occasion of the accident the flagman signaled
him that the way was clear. There is also a substantial
conflict of evidence as to whether plaintiff's negligence
contributed to his injury. The intervening coal-house
on the line of sight, which the evidence strongly tends
to prove, is sufficient of itself to establish a conflict on
this issue. It follows that the order denying a new trial
cannot be reversed on the ground that the verdict is not
justified by the evidence.

The most that reasonably can be claimed by appel-
lant is that on the issue as to contributory negligence a
preponderance of the evidence, as it appears in the
record, seems to be in favor of the defendant.

The erroneous instruction on account of which the
former judgment was reversed was not repeated on the
new trial, but appellant contends that the court erred
on the new trial, in refusing to give the following in-
struction requested by defendant:

"The railroad crossing near which the plaintiff was
injured, spoken of in the testimony here, was not on
any public street. It was on a portion of section six of
the seawall then in course of construction by the de-
fendant, San Francisco Bridge Company, and under its
control."

This requested instruction seems to be wholly com-

posed of matters of fact, any dispute as to which should have been submitted to the jury. But conceding the instruction (whether fact or law) to be true, what is the consequence? In order to determine the legal effect of the facts stated, other relevant facts which the evidence tended to prove should be considered, namely: That plaintiff hauled about twenty-five loads of rock per day, that being considered a day's work; that fifteen other teams were employed by Cummings & Co. in hauling rock over the same road and crossing at the same time and for the same purpose; that other teams were hauling lumber and other materials over the same crossing for the construction of the wharf during the same time; and that defendant's train of sand cars made about twenty trips a day. Under these circumstances, was the degree of care required by law of the defendant, while running its sand train less than it would have been if the roads had been public roads? I think that, under these circumstances, the legal effect of the facts that these roads had been constructed by defendant for its private use, and were wholly under its control, was that defendant was bound to exercise ordinary care for the safety of its employees and sub-contractors who were using them by its authority and for its benefit. And it appears that defendant usually recognized its obligation to this extent, by signaling the approach of the train by all the modes ordinarily employed for that purpose; but as to whether any kind of signal was given that could have been heard or seen by teamsters approaching the crossing from the wharf, the evidence is conflicting. The only signal as to which there is no conflict was that said to have been given by the flagman to the engineer of the train, from a position north of the coal-house, where it could not be seen by the plaintiff, or any other teamster, approaching from the wharf; and from which position the flagman could not have seen the road leading from the wharf to the crossing.

On principle, I think this case cannot be distinguished from that of *Strong* v. *Sacramento etc. R. R. Co.*, 61 Cal.

326, in which the following instruction had been denied: "If plaintiff's horses were frightened by the mere ordinary appearance of defendant's locomotive or train, or by the ordinary noise of its passage, and his injury caused thereby, he cannot recover."

This court, by Mr. Justice McKinstry, said: "This instruction ignores the other circumstances of the case. We cannot say that the plaintiff ought not to have recovered, if by reason of the carelessness of the engine-driver, and without any want of prudent care on his own part, he found himself in such close proximity to the locomotive as that his team, composed of horses ordinarily well broken, and of ordinary gentleness, were startled, frightened, and ran. All the circumstances were to be considered by the jury."

So here in his contention that plaintiff cannot recover because his horse was frightened merely by the ordinary movement, noise or appearance of the cars, counsel for appellant ignores all the other material evidence tending to prove that the movement of the cars which frightened plaintiff's horse was without ordinary care for the safety of the plaintiff and others who may have been rightfully approaching the crossing, and that the want of such ordinary care was the proximate cause of the injury complained of. But it is to be presumed that the jury considered all such evidence, and, since it tended to prove every fact involved in the verdict, I think the judgment and order should be affirmed.

BELCHER, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

GAROUTTE, J., HARRISON, J., PATERSON, J.

Hearing in Bank denied.